# Richmond

## James David Stover v. Commonwealth of Virginia.

April 26, 1971.

Record Nos. 7316, 7317 and 7318.

Present, All the Justices.

*Claude M. Hilton* (*Varoutsos, Koutoulakos & Arthur*, on brief), for plaintiff in error in Record Nos. 7316, 7317 and 7318.

C. *Tabor Cronk, Assistant Attorney General* (*Andrew P. Miller, Attorney General; William P. Robinson, Jr., Assistant Attorney General,* on brief), for defendant in error in Record Nos. 7316, 7317 and 7318.

COCHRAN, J., delivered the opinion of the court.

On January 27, 1969, James David Stover was convicted on separate charges of second degree murder of Francis (Frank) Koerner, malicious wounding of David Ricken, and unlawful wounding of Paul Koerner. His punishment was fixed at confinement in the penitentiary for ten years, ten years and one year, respectively, or a total of 21 years. From the judgment of the lower court sentencing him in accordance with the jury verdict, we granted Stover a writ of error.

We are concerned with the trial court's refusal to grant a motion for a mistrial because of an allegedly improper question asked Stover on cross-examination and its refusal to grant a new trial on the ground of suppression of evidence favorable to the accused.

On the evening of July 25, 1968, Stover and two companions, Burrell and Henderson, were riding in Fairfax County in Stover's 2-door Volkswagen Karmann Ghia. They overtook a 2-door Pontiac being driven by David Ricken, in which Thomas Bewick, Frank Koerner, age 17, Marlene McDaniels, and Frank's older brother, Paul Koerner, were passengers. Considerable beer had been drunk by all three persons in the Stover car and by Ricken, Paul Koerner and Bewick in the Ricken car.

Miss McDaniels testified that, as the Karmann Ghia passed, its occupants made obscene gestures and shouted at those in the Pontiac. A chase ensued over various streets and roads during which the cars passed each other, and insults and empty beer cans were hurled from one to the other, the Commonwealth's evidence being in conflict as to whether the first object was thrown from the Ricken car or the Stover car.

Bewick said that Frank Koerner was "acting . . . belligerent the whole time" but that his companions did not share his desire to fight after seeing what they thought was a tire iron in the hands of one of Stover's passengers.

Ricken maintained that after trying to escape by a back road he drove into a service station which had closed for the night, cut his

lights and coasted to a stop on the gravel parking lot, only to see the Stover car pull in behind him a few seconds later.

Bewick testified that on Ricken's directions, he then jumped out and threw rocks at the Karmann Ghia to keep Stover and his friends from getting out while Ricken and the Koerner brothers ran to hold the car doors shut.

According to Ricken, when he reached the driver's door Stover was already out of the car advancing with both hands up. Ricken, who had seen no weapon in Stover's hand, grabbed him by the wrists, pinned him against the car and hit him in the head twice with his right hand. Ricken was then struck in the head by someone behind him, stabbed in the mouth by Stover and knocked to one knee by another blow on the back of his head. Stover then pushed him down and stabbed him in the neck and again beside the right shoulder blade.

Ricken recalled that Frank Koerner ran up to Stover saying, "I'm going to get you for this", and that Stover replied with an obscenity, ". . . I am going to kill you", and attacked Frank with his knife. Ricken next remembered Frank crying out, "Dave, I am stabbed, I am stabbed." Ricken assisted Frank to his car and, with Marlene Mc-Daniels, drove him to a police substation, leaving their other two friends behind.

Paul Koerner and Bewick meanwhile had been on the passenger side grappling with Burrell through the window of the Karmann Ghia. When Stover with his knife and Henderson with an army intrenching shovel came at them Bewick ran for safety but Paul was held by the arm by Burrell. Paul testified that Henderson hit him in the back three times with the shovel and Stover slashed him with the knife and then held it to his throat. Conciliatory words were then exchanged, Stover offered assistance to Paul Koerner and the encounter abruptly ended.

A few hours later Frank Koerner died from his stab wounds. The same morning Stover heard a radio report of the death, turned himself in that afternoon with the army surplus bayonet used by him in the fight, and voluntarily gave a statement in writing to the police. In the statement and in his testimony he admitted using the bayonet but insisted that he used it only in self-defense to ward off the blows of his attackers.

According to Stover's testimony his windshield was shattered as he came to a stop at the service station and the occupants of Ricken's car rushed at him. He thought that they might have some kind of weapon. Stover pushed against the door to get out as two boys from

the other car pushed it in and caught his leg. He grabbed the bayonet from the "tunnel" in the floor and forced his way out, flailing about as he was attacked first by the two boys on the driver's side and then by the two boys on the other side. He admitted that in swinging the bayonet he stabbed one of his assailants in the back.

■ Stover maintains that the court erred in refusing to grant a mistrial after the Assistant Commonwealth's Attorney asked him about his subsequent use of a bayonet. The exact questioning was as follows:

"Q. Have you had a fight since?
"A. No, sir.
"Q. Have you used a bayonet since?
"A. No, sir.
"Q. Did you use a bayonet on the 11 day of January at your gas station this year?
"A. No, sir, I did not."

At this time counsel for Stover objected and the court sustained the objection, directing that the question be stricken and that the jury disregard it. Defense counsel immediately moved for a mistrial which was denied and the motion was renewed at the conclusion of Stover's testimony.

After lengthy argument, during which the court reproved the Assistant Commonwealth's Attorney for jeopardizing the trial by his improper question, the court again overruled the motion for a mistrial but suggested another method of removing any prejudice. Stover would be permitted to return to the stand for questioning only by his own counsel to deny any previous or subsequent use of a bayonet and to explain that the incident of January 11 was an assault on him in his filling station by two apparent robbers, one of whom was carrying a knife. Without waiving his exception, counsel for Stover followed this suggested procedure.

While conceding that its questioning was improper, the Commonwealth contends that any prejudice which might have resulted was cured by the court's instruction to the jury to disregard the impropriety.

As a general rule any prejudice resulting from an improper question may be removed by prompt direction from the trial court to the jury to disregard it. *Lewis* v. *Commonwealth*, 211 Va. 80, 82-83, 175 S. E. 2d 236, 238 (1970); *Asbury* v. *Commonwealth*, 211 Va.

101, 104-105, 175 S. E. 2d 239, 241 (1970). Here, the court did not believe that the prejudicial effect could be so eliminated as shown in its comment that "[t]elling the jury to disregard it is like telling them not to look at that elephant in the corner." So the additional remedial action was taken which the court believed to be adequate. *See People* v. *Crews*, 110 Cal. App. 2d 218, 242 P. 2d 64 (1952); *State* v. *Fredeen*, 167 Minn. 234, 208 N. W. 653 (1926).

On this ground alone, we find no abuse of discretion constituting reversible error in the refusal of the trial court to grant a mistrial.

After judgment had been entered on January 27, 1969, the effective date of the judgment order was extended by another order to February 28. On February 24 motions for a new trial were filed by Stover, supported by affidavit of his counsel, alleging that new material evidence had been found since the trial that would probably have caused the jury to reach a different verdict and that evidence favorable to Stover concerning the character of the prosecuting witnesses had been suppressed by the Commonwealth.

At the hearing on February 28 Stover's counsel testified that at the time of the preliminary hearing he had asked the Commonwealth's Attorney for copies of all statements; that he received copies of Stover's statement and the autopsy report but that he was informed that there were no statements from complaining witnesses and none was received by him; and that he had asked an independent source for a police report in Arlington County on the complaining witnesses and was informed that they had no police records there.

He asserted that he had on February 28 seen for the first time a statement taken from Paul Koerner the day after the fight in which reference was made to a similar fracas in Arlington County a few days before which Paul said David Ricken had started.

Stover's counsel further said that on January 31 he had been informed by a friend in the Arlington County Police Department that there was a police report of a fight in Arlington County about 1:00 a.m. on July 19, 1968, between David Ricken, Paul Koerner, Frank Koerner, Thomas Bewick and a McDaniels boy, and two occupants of another car, Edwards and Forshee. From the evidence it appears that the report of this incident was filed under the name of David Rickman, rather than David Ricken, and that even if it had been correctly indexed, it might not have been available to Stover's counsel.

At the hearing on February 28 Forshee admitted throwing the first object, a tire iron, and hitting Ricken and Frank Koerner but said that he did so when some of the occupants of Ricken's car

threatened to attack him and Edwards. He testified that Ricken then smashed the headlights of the Edwards car with a baseball bat, that Frank Koerner threw a tire iron through the windshield and beat on the right side of the car, and that Paul Koerner threw a jack handle against it. Complaints were filed by both Edwards and Ricken but, disregarding the recommendation of the police, they decided not to swear out warrants.

The evidence shows that copies of statements of complaining witnesses concerning the July 25 fight were available and were obtained by attorneys defending Stover's companions. The Commonwealth's Attorney, whose participation in the case ended with the preliminary hearing, had instructed the police to make copies of all statements available to counsel. Furthermore, the first Commonwealth witness at Stover's trial testified that he had taken statements from the complaining witnesses. So Stover's counsel was put on notice at that time of the existence of a statement from Paul Koerner and could have then obtained a copy.

The Assistant Commonwealth's Attorney who tried the Stover case admitted that he had in his file the police report of the July 19 incident in Arlington County, that he thought Stover's counsel was familiar with it but that he also thought it contained irrelevant and immaterial evidence and that he had forgotten about it.

The trial court concluded that by the exercise of due diligence the police report could have been obtained by Stover's counsel, that there was no "passive nondisclosure" by the prosecutor and that "more importantly, if admissible, it was not the type of evidence that would on retrial change the position of the jury."

■ The Commonwealth does not contend that the evidence would have been inadmissible. Where an accused adduces evidence that he acted in self-defense, evidence of specific acts is admissible to show the disposition and character for turbulence and violence of the deceased and of complaining witnesses. *See Randolph* v. *Commonwealth*, 190 Va. 256, 56 S. E. 2d 226 (1949).

■ Stover was not entitled to a new trial on the ground of after-discovered evidence because the record supports the court's finding that the evidence could have been obtained through the exercise of reasonable diligence by his counsel. *See Reiber* v. *Duncan*, 206 Va. 657, 663, 145 S. E. 2d 157, 162 (1965). But this does not dispose of the assignment of error relating to alleged suppression of evidence, where less stringent requirements apply. *See Hamric* v. *Bailey*, 386 F. 2d 390 (4th Cir. 1967).

■ It appears that since there was no deliberate or fraudulent withholding of evidence, the Commonwealth has attached little significance to this assignment. Indeed in oral argument before us the principal contention of the Commonwealth was that Stover's motion for a new trial was not timely made, an argument conclusively rebutted by the record.

There is no suggestion or intimation that the Assistant Commonwealth's Attorney acted improperly. Undoubtedly, he would have furnished a copy of the police report if he had thought it relevant or if he had been asked for it. Undoubtedly, it would have been requested if Stover's counsel had received a copy of Paul Koerner's statement. No motion for production of statements or evidence favorable to the accused was filed, nor was any request for police reports made through official channels. But, according to the uncontradicted testimony of Stover's counsel, he did ask the Commonwealth's Attorney for statements of complaining witnesses and was told that there were none.

It is now settled that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process when the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U. S. 83, 87, 83 S. Ct. 1194, 1196-97, 10 L. Ed. 2d 215, 218 (1963).

Many courts recognize that the requirement of materiality is met even where the evidence would only affect the credibility of witnesses. *See* Annot., *Withholding or Suppression of Evidence by Prosecution in Criminal Case as Vitiating Conviction*, 34 A. L. R. 3d 16, 47 (1970).

Some courts have held that failure to disclose unrequested evidence which would have been obtained by diligent counsel will nevertheless cause a conviction to be reversed. *See United States v. Keogh*, 391 F. 2d 138, 147 (2nd Cir. 1968); *Hamric v. Bailey, supra; Levin v. Katzenbach*, 363 F. 2d 287 (D. C. Cir. 1966), where the evidence was equally available to prosecution and defense; "Disclosure of Prosecutor's Evidence—Disclosure of Favorable and Material Evidence Required Although Procurable by Diligent Defense Counsel", 42 N. Y. U. Law Rev. 764 (1967).

While we express no opinion as to unrequested information, we conclude that Stover comes within the requested evidence rule of *Brady v. Maryland, supra*. We are troubled by the fact that through passive or inadvertent nondisclosure Stover was denied the oppor-

tunity to show that he was set upon by persons who had recently committed acts of violence evidencing turbulence of disposition, especially since he found it necessary to explain the incident of January 11 involving a knife.

We cannot agree with the trial court that this kind of evidence would not have changed the position of the jury. On the contrary, we believe that it would be unrealistic to conclude that such evidence might not have affected the verdict, at least as to punishment. Accordingly, we reverse the convictions and remand the cases for a new trial.

*Reversed and remanded.*

CARRICO, J., concurs in the result.