## Richmond

## DONALD F. BELLFIELD v. COMMONWEALTH OF VIRGINIA.

October 14, 1974.

Record No. 740239.

Present, I'Anson, C. J., Carrico, Harrison, Cochran, Harman and Poff, JJ.

*C. Bruce Baird (Donald S. Lilly,* on brief), for plaintiff in error.

*Stuart Bateman, Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error.

Harman, J., delivered the opinion of the court.

Donald F. Bellfield, the defendant, was found guilty of the abduction and attempted robbery of Ella Mae Lee by a jury which fixed his total punishment at a term of five years in the state penitentiary. He appealed from the trial court's order pronouncing sentence upon these verdicts.

We granted a writ of error and supersedeas limited to Bellfield's claim that the trial court erred in not requiring the Commonwealth to produce, prior to and for purpose of cross-examination of the complaining witness, police notes and reports of statements made by her to the investigating officers when they received her initial report.

It suffices to say that the evidence of the complaining witness establishes that she was the victim of an abduction and attempted robbery on March 13, 1973, at the motel where she was employed. Her evidence shows that she had ample opportunity to see and observe the man who committed these offenses. Prior to the incident Miss Lee was not acquainted with Bellfield. She

first identified him as her assailant from photographs shown her by the police on the following day. She positively identified him as her attacker at the preliminary hearing and again at trial.

The defendant, throughout this proceeding, has maintained that this is a case of mistaken identity. He says he did not commit the offenses charged. Testimony at trial, supplied by a number of alibi witnesses, places him several miles from the scene of the crimes.

Defense counsel, in challenging her identification of the defendant, conducted a rigorous cross-examination of Miss Lee. This examination required her to answer many questions detailing the physical characteristics, conduct and dress of her assailant. In the course of this examination, Miss Lee revealed that she had described the man who attacked her to the police when they arrived at the scene to receive her initial report. She testified that written notes were made by the police while they were interviewing her.

Defense counsel then made the following motion:

". . . [I]n order effectively to cross[-]examine this witness, and under the due process guarantees of *United States* v. *Jen[c]ks*,[1] the defense now moves for the production of the police notes which were verbatim transcripts of evidence and reports made by this witness at the time of her interrogation."

In colloquy following this motion, the Assistant Commonwealth's Attorney offered to ascertain whether any written statements had been taken from Miss Lee and, if so, to produce them. Prosecution counsel, while expressing doubt that the *Jencks* rule applied, took the position that police notes were not statements of the character which could be compelled to be produced even if *Jencks* were applicable. The Commonwealth also suggested that the police officers were available to testify should the defendant elect to pursue the impeachment of Miss Lee.

The trial court denied the defendant's motion.

Subsequent evidence discloses that two police officers, White and Bradley, were present and conducted the initial interview with Miss Lee. Officer Bradley testified that she described the assailant to Officer White "who took the original report." When

[1] 353 U.S. 657 (1957).

asked if he had the report with him, Bradley responded that he did not. Officer Bradley was asked about the description given by Miss Lee and he related the description from memory. He was not asked if he had made any notes or, if any were made, to produce them.[2]

Investigator Shamblin, the chief investigating officer in the case, also testified. He was first called as a witness by the defendant and later, on rebuttal, as a prosecution witness. On neither occasion was he questioned about the whereabouts or contents of any notes or reports made at Officer White's initial interview with Miss Lee.

Although the Assistant Commonwealth's Attorney had indicated that Officer White was available to testify, he was not called as a witness by either party.

Recognizing that the *Jencks* rule, as codified in 18 U.S.C. § 3500, is not ordinarily of constitutional dimension but is a rule of evidence governing trials before federal tribunals, *United States v. Augenblick*, 393 U.S. 348, 356 (1969), the defendant points to dictum at page 356 in *Augenblick* that denial of production under some extreme circumstances might constitute denial of Sixth Amendment rights. No such extreme circumstances are present here, nor does this case present a question of the suppression of evidence known to the Commonwealth which is favorable to the defendant. *Stover* v. *Commonwealth*, 211 Va. 789, 180 S.E.2d 504 (1971).

We likewise find no merit in defendant's claim that he was denied Equal Protection and Due Process under the Fifth and Fourteenth Amendments to the Constitution of the United States and Article I, Section 8 of the Constitution of Virginia.

The defendant urges that we adopt the rationale of the *Jencks* rule as a matter of public policy. He argues that fundamental fairness requires that this be done.

In *Abdell* v. *Commonwealth*, 173 Va. 458, 2 S.E.2d 293 (1939), we sustained the trial court in refusing to allow defense counsel to examine, before trial, certain writings of the defendant in possession of the Commonwealth on grounds that this would "tend to subject the attorney for the Commonwealth to great

---

[2] Bradley also testified that he had observed the defendant in close proximity to the motel as he drove past there less than ten minutes before receiving a radio call to go to the motel to answer the complaint.

annoyance, to the probable destruction or loss of material evidence, and to compel the Commonwealth not only to furnish the accused with a full bill of particulars, but to supply the accused with physical evidence it intends to introduce upon the trial. Such a rule as is urged by accused would, in our opinion, subvert the whole system of criminal law." *Id.* at 472, 2 S.E.2d at 298-99.

Later in *Ossen v. Commonwealth,* 187 Va. 902, 48 S.E.2d 204 (1948), we found that the trial court had abused its discretion in refusing to require the production of a written statement in the possession of the Commonwealth signed by a prosecution witness. In that case the Commonwealth had earlier introduced a part of the statement which proved inconsistent with the witness' testimony at trial.

In *Westry v. Commonwealth,* 206 Va. 508, 144 S.E.2d 427 (1965), we found no abuse in discretion where the trial court refused the defendant's request for a list of witnesses and their reports "touching events and activities in connection with this case."

Rule 3A:14(b)(2) of the Rules of Court, which became effective January 1, 1972, provides for limited pretrial discovery and inspection by the defendant in felony cases and thereby liberalizes the rule laid down in the earlier cases. Under Rule 3A:14 the court may order pretrial discovery of written or recorded statements of the accused and of certain scientific reports relating to the accused or the victim which are in possession or control of the Commonwealth. It also provides that the court may order pretrial inspection and copying of books, papers, documents, tangible objects, buildings or places in the possession, custody or control of the Commonwealth upon a showing that the items sought may be material to the preparation of the defense and that the request is reasonable.

To clarify what is authorized to be discovered thereunder, the rule provides that it ". . . does not authorize the discovery or inspection of statements made by Commonwealth witnesses or prospective Commonwealth witnesses to agents of the Commonwealth or of reports, memoranda or other internal Commonwealth documents made by agents in connection with the investigation or prosecution of the case . . . ."

The defendant's right to discover and examine written statements made by a prosecution witness to agents of the state

for purposes of cross-examination and impeachment, after that witness has testified for the prosecution, has been the subject of considerable controversy and attention in recent years. Cases from our sister states dealing with this subject have been classified and collected in an extensive annotation at 7 A.L.R.3d at pp. 181-274. We find that a majority of these states has adopted the view that such statements are not discoverable for purposes of cross-examination and impeachment upon grounds of public policy. We, of course, are aware that a substantial minority has held otherwise.

We follow the majority and decline to adopt the rule urged here by the defendant. We do so for several reasons.

The defendant may, of course, obtain exculpatory evidence known to the Commonwealth under the doctrine established in *Stover* v. *Commonwealth, supra.* In conducting his own investigation, defendant's counsel has the same right as the Commonwealth to interview witnesses and to obtain their statements. In addition, the same policy of fundamental fairness in protecting the ability of the Commonwealth to prosecute, which we recognized in our earlier cases and led to the adoption of Rule 3A:14, is applicable to what would have been a fishing expedition into the Commonwealth's files at trial.

Here there was no attempt to show that the police notes were accurate verbatim transcripts of Miss Lee's initial report to Officer White. To permit their use as evidence to cross-examine and impeach her would be manifestly unfair to the witness, who had neither seen their content nor approved them.

While we are vigilant to protect the defendant's right to a fair trial, we must likewise be vigilant in maintaining the confidence of our citizens in the police and prosecuting officers. It is only through the testimony of victims of crime and other public-spirited citizens that the criminal laws of the Commonwealth may be fairly and uniformly enforced.

We do not mean to imply that the defendant should be deterred from challenging and impeaching a prosecution witness by proper means. Such a means was available to the defendant here for, had there been significant discrepancies between Miss Lee's initial description and her later testimony, this could have been established by the testimony of Officer White.

For these reasons the judgment of the trial court is affirmed.

*Affirmed.*