## CIRCUIT COURT OF THE CITY OF ROANOKE

Commonwealth of Virginia

v.

Stephen Edward Hubble

Commonwealth of Virginia

v.

Mary Alice DeVilbiss

March 7, 1980

By JUDGE JACK B. COULTER

The defendants filed separate but identical motions for discovery and inspection and for exculpatory evidence in these cases on January 22, 1980. Twenty-two specific requests, some overlapping, were made. A hearing on them was held on January 31, 1980. Some requests were granted, some denied and some taken under advisement. Pursuant to the Court's direction, the defendants filed a Memorandum in Support of their motions on February 19, 1980. The Commonwealth replied by letter-memorandum on February 28, 1980.

The unresolved issues generated by these motions may be summarized and restated as follows:

1. Must the Commonwealth disclose the names and

addresses of the witnesses it intends to call to testify at trial?

2. Must the Commonwealth disclose the names and addresses of eyewitnesses to the alleged crime whom it does not intend to call to testify at trial or the names and addresses of persons who might have otherwise provided information to the police?

3. Must the Commonwealth provide the defendants with the criminal records of all witnesses it intends to call to testify at trial?

4. Must the Commonwealth reveal the details of any plea agreements or promises of leniency or other considerations it may have made to any witnesses it intends to call to testify at trial?

5. Are the defendants entitled to any raw notes made by investigating officers or agents of the Commonwealth from which written statements or summaries of oral interviews of the defendants have been prepared?

These issues will now be addressed separately.

### *Must the Commonwealth Identify Witnesses It Intends to Call or Other Witnesses or Persons Who Have Provided Information Whom It May Not Call*

As the Commonwealth has conceded, it must provide the defendants with all evidence of which it is aware which tends to exculpate or is otherwise favorable to the defendants when so requested. The discussion which follows, therefore, is subject to this all important constitutional mandate, which is a continuing responsibility.

The general rule is well stated by the defendants in the very first sentence of their brief. Quoting from 21 Am. Jur. 2d, *Criminal Law*, § 328:

> In the absence of a provision so requiring, *the state is not bound to furnish the defendant with the names of its witnesses.* (emphasis added)

Notwithstanding valiant efforts to justify departure from or exception to this general rule and a vigorous appeal for more liberal and expansive interpretation, the defendants do not succeed. It is of little persuasion, as the defendants argue, that the statutes of Alaska,

California, Iowa, Kentucky, Missouri and Oregon may require the disclosure of the state's grand jury witnesses or that Arizona and Oklahoma[1] go further and encourage the revelation of the names of all the prosecution witnesses or that the U. S. Code mandates the disclosure of the government's witnesses in trials of treason or other capital offenses. Neither does argument criticizing the perpetuation of the "poker game" mentality of criminal discovery as it existed at common law, nor bemoaning the claimed imbalance in discovery rights between the all-powerful state and the individual accused, nor bewailing the so-called crippling effect of limited discovery on the right to cross-examine effectively eliminate the fact that Virginia law has consciously considered all of these concerns. Narrow or not, our Supreme Court has clearly held that the Commonwealth is not required to divulge the names either of witnesses it intends to call or others who might have knowledge so long as exculpatory evidence is not withheld. Hence, in *Bellfield* v. *Commonwealth*, 215 Va. 303 (1974), the leading Virginia case on this subject and not cited by the defendants, the Court expressly approved *Westry* v. *Commonwealth*, 206 Va. 508 (1965), which had been decided before the adoption in 1972 of Part Three A to the Supreme Court Rules on Criminal Practice and Procedure. In *Bellfield* the Court notes:

> In *Westry* v. *Commonwealth*, 206 Va. 508, 114 S.E.2d 427 (1965), *we found no abuse in discretion where the trial court refused the defendant's request for a list of witnesses* and their reports "touching events and activities in connection with this case." (emphasis added)

Further, in *Lowe* v. *Commonwealth*, 218 Va. 670 (1977), the defendant had urged that the Commonwealth be ordered to file "the names and addresses of all persons who were

[1] The following additional states also have statutes or rules which require that the accused be notified of the witnesses to be called against him: Arkansas, Colorado, Florida, Idaho, Illinois, Indiana, Kansas, Michigan, Minnesota, Montana, Nebraska, Nevada, Tennessee and Utah. See Notes of Advisory Committee on Rules, Rule 16 at page 48, West's Handbook on Federal Rules (1979 Edition). Also, see the ABA Standards – Discovery and Procedure Before Trial, Part II, 2.1(a)(i).

present at the time the alleged offense was committed." The Court held:

> There is no general constitutional right to discovery in a criminal case and the case of *Brady* v. *Maryland*, 373 U.S. 83 (1963), relied on by the defendant, did not establish one. *Weatherford* v. *Bussey*, 429 U.S. 545, 559 (1977). *Our rule providing for discovery in a criminal case, Rule 3A:14, contains no provision requiring the Commonwealth to furnish the names and addresses of the eyewitnesses to a crime.* (emphasis added)

Hence, these two cases and the absence in Rule 3A:14 of any requirement of the Commonwealth to furnish a witness list to a defendant establishes that Virginia clearly follows the general rule duly noted by the defendants:

> the state is not bound to furnish the defendant with the names of its witnesses.

As far as arguing what the law ought to be, which the defendants advance so eloquently, it is well to remember that in Virginia prior to January 1, 1972, an accused had no right to the inspection or disclosure of any evidence in the possession of the Commonwealth. As observed in the *Virginia Lawyers Handbook*, "Defending Criminal Cases in Virginia" (1975), p. 126:

> The traditional view was that liberal criminal discovery was undesirable because it would lead to (1) perjury and suppression of evidence, (2) possible bribery and intimidation of potential Commonwealth witnesses, and (3) a further imbalance in the criminal process in favor of the defendant since the Commonwealth could not request discovery due to the constitutional prohibition of compelled self-incrimination.

The public policy in Virginia on the general subject of discovery in criminal cases is set forth in *Bellfield* as follows:

While we are vigilant to protect the defendant's right to a fair trial, we must likewise be vigilant in maintaining the confidence of our citizens in the police and prosecuting officers. It is only through the testimony of victims of crime and other public-spirited citizens that the criminal laws of the Commonwealth may be fairly and uniformly enforced.

In addition, it is of interest to observe the convincing argument advanced in the United States Senate in support of its rejection of a proposed amendment to Rule 16 of the Federal Rules of Criminal Procedure, which would require the government to disclose the names of its witnesses. These remarks are reported in 13A *Bender's Forms of Discovery*, § 8.11, beginning at p. 8-184, as follows:

Our proposed amendment reflects a conviction that the rules concerning the disclosure of witnesses should be stricken. Although their purpose is to enhance fairness, any minor enhancement of fairness in the criminal trial process that might flow from compulsory pretrial exchange of witness lists should not be at the expense of witnesses and victims of crime. It should be emphasized that criminal trials today are not unfair. Defendants enjoy more rights under our Federal criminal justice system than defendants under the laws of any other nation. As examples, our law requires defendants to be given ample pretrial notice. The indictment itself must contain a statement of all the essential facts. Defendants may then be given bills of particulars elaborating the facts charged. Defendants can use present Rule 16 to obtain their own statements and grand jury testimony, if any, as well as copies of reports of examinations and tests, and of other books, papers, documents, and tangible objects material to the case. Additional discovery is given informally by Federal prosecutors in many cases, in an effort to induce a guilty plea by acquainting the defendant and his counsel with the strength of the Government's evidence. More-

over, in the very rare situation where a defendant may properly claim unfair surprise from the calling of a particular Government witness, a continuance may be granted by the court.

In short, the case has not been made for pretrial disclosure of witnesses in the face of potential harm. *Indeed, pretrial disclosure of witnesses could weaken the search for truth in the criminal trial.* (emphasis added)

The Senate version, which made no provision for witness list discovery, finally prevailed. The Joint Explanation Statement of the Committee of Conference said in part:

A majority of the Conferees believe it is not in the interest of the effective administration of criminal justice to require that the government or defendant be forced to reveal the names and addresses of its witnesses before trial. *Discouragement of witnesses and improper contacts directed at influencing their testimony, were deemed paramount concerns in the formulation of this policy.* (emphasis added)

It is well to conclude this point by recalling the observations of Judge Learned Hand in *United States* v. *Garsson*, 291 F. 646, 649 (S.D.N.Y. 1923):

*Under our criminal procedure the accused has every advantage.* While the prosecution is held rigidly to the charge, he need not disclose the barest outline of his defense. He is immune from question or comment on his silence; he cannot be convicted when there is the least fair doubt in the minds of any one of the twelve. Why in addition he should in advance have the whole evidence against him to pick over at his leisure, and make his defense, fairly or foully, I have never been able to see. . . . Our dangers do not lie in too little tenderness to the accused. Our procedure has been always haunted by the ghost of the innocent man convicted. It is an unreal dream. *What we need to fear is the archaic formalism and*

> *the watery sentiment that obstructs, delays, and defeats the prosecution of crime.* (emphasis added)

See also the opinion of Chief Justice Vanderbilt in *State v. Tune*, 98 A.2d 881 (N.J. 1953).

The Commonwealth, then, for the reasons aforesaid will not be required to disclose the names of witnesses it intends to call or other witnesses or persons who may have provided information whom it may not call subject, of course, to the Commonwealth's continuing obligation to provide exculpatory information to the defendants.

### Must the Commonwealth Provide the Defendants With The Criminal Records of All Witnesses It Intends to Call or Reveal the Details of Any Plea Agreements or Promises of Leniency Made to Such Witnesses

If before trial the Commonwealth were required to provide the defendants with the criminal records of all witnesses it intended to call to testify or reveal the details of any plea agreements or promises of leniency made to such witnesses, then it would, in effect, be disclosing the names of its witnesses, or at least some of them, in advance of trial. Such requirement, of course, would render meaningless the ruling that the Commonwealth has no duty to identify its witnesses before trial. The defendants should not be permitted to accomplish indirectly what they cannot do directly.

Disclosing such information at the time of trial, however, is another matter. In *Stover v. Commonwealth*, 211 Va. 789 (1971), the Court clearly indicated its view that the requirements of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to provide exculpatory material extended to evidence that might affect the credibility of witnesses. The Court quoted from *Brady*:

> It is now settled that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process when the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecutor."

Continuing, the Court in *Stover* says:

> Many courts recognize that the requirement
> of materiality is met *even where the evidence
> would only affect the credibility of
> witnesses.* (emphasis added)

The fact that a witness for the Commonwealth has been convicted of a felony or a crime involving moral turpitude is undeniably a factor that might affect his credibility. So also would the prospect that a witness might obtain some favor, such as a reduced sentence, be an element of potential influence on jurors charged so heavily with weighing the credibility of witnesses.

No citation of authority is really necessary to support the proposition that evidence within the control of the Commonwealth that might impeach or discredit one of its witnesses is clearly evidence favorable to the accused and under the *Brady* doctrine, being or tending to be exculpatory, must at some point in time be provided the defendant upon request. For some authorities on this point, see *United States* v. *Eley*, 335 F. Supp. 353 (N.D. Ga. 1972); *Brady and Williams* v. *Dutton*, 400 F.2d 797 (5th Cir. 1968); *Giles* v. *Maryland*, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967); *United States* v. *Leichtfuss*, 331 F. Supp. 723 (N.D. Ill. 1971); *State* v. *Bowden*, 272 A.2d 141 (1970). As an example in support of such proposition, the Court said in *United States* v. *Leichtfuss, supra*:

> The impeachment value of a prior criminal record
> is fully appreciated by the prosecution and
> its use should be available to both sides of
> a criminal trial.

And the observation set forth in *State* v. *Bowden, supra*:

> To deny an accused information relating to
> an essential step necessary for cross exami-
> nation of a witness is, however, to deny a
> substantial right and to withdraw one of the
> safeguards essential to a fair trial. . . .
> It is obvious that defense counsel, armed with
> information concerning the pendency of charges
> against a prosecution witness or of his convic-
> tion of a crime. . . would most likely propound

questions concerning circumstances tending to suggest a hope or expectation of leniency productive of a motive or interest likely to affect the witness' testimony. . . . The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of a guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend.

In the very recent Virginia case of *Dozier* v. *Commonwealth*, 219 Va. 1113, 253 S.E.2d 655, decided April 20, 1979 (Record No. 781132), our Supreme Court held that a prior out-of-court statement of its chief witness which was inconsistent with her testimony at trial should have been disclosed to the defendant who had made the proper request. The Court held:

> *The exculpatory value of Cindy's extra-judicial statement was its utility for discrediting her as a witness.* Speaking in a case involving the *Mooney* situation (*Mooney* v. *Holohan*, 294 U.S. 103 (1935), where the prosecution knowingly used perjured testimony) *the Supreme Court has held that, even when the suppressed evidence* "*goes only to the credibility of the witness, it is as material in the constitutional sense as evidence which goes directly to the question of guilt* where [t]he jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence." *Napue* v. *Illinois*, 360 U.S. 264, 269 (1959). See also *Giglio* v. *United States*, 405 U.S. 150 (1972). In our view, the same is true in a Brady situation such as the one at bar. (emphasis added)

Hence, any of the classical elements that might affect the credibility of a prosecution witness, such as a felony conviction, personal interest, such as the prospect of favored treatment, or prior inconsistent statements, come within the ambit of exculpatory evidence and must be made available to a defendant who seeks such information.

The conflict, however, is over when such information should be made available. As above indicated, in order not to emasculate the rule that the Commonwealth need not disclose the identity of its witnesses prior to trial, the interests of the defendants will not be unduly prejudiced so long as such information is made available at trial when such witness actually testifies. Such potentially exculpatory evidence, in other words, since it is limited to the credibility of a witness, does not in fact become material until the witness puts that credibility on the line which he does not do until he actually takes the witness stand.

The Commonwealth, therefore, will be required to make available to the defendants at the time of trial the criminal records showing a conviction of a felony or a crime involving moral turpitude of any of its witnesses and the details of any plea agreement or promises of leniency or other consideration made to any such witnesses. In addition, the Commonwealth should be prepared to make available any prior written inconsistent statements made by any of its witnesses.

*Are the Defendants Entitled to Any Raw Notes Made*
*By Agents of the Commonwealth From Which Written*
*Statements or Summaries of Oral Interviews of the*
*Defendants Have Been Prepared*

Rule 3A:14(b)(1) provides that:

> Upon written motion of an accused a court shall order the Commonwealth's Attorney to permit the accused to inspect and copy or photograph any relevant (i) written or recorded statements or confessions made by the accused, or copies thereof, that are known by the Commonwealth's Attorney to be within the possession, custody, or control of the Commonwealth.

The issue here is whether or not an investigating officer's notes of his interview with a defendant from which a typewritten statement has been prepared is discoverable.- The statute provides that the accused be permitted to inspect and copy any relevant "written or recorded statements or confessions made by the accused, or copies thereof." The defendants argue that this includes, or is intend-

ed to include, not only statements that a defendant may have written out personally (and they rarely are), but also such statements "made by the accused" which others may have written out, including the rough notes of an investigating officer. It is the statement made by an accused that should be discoverable, the defendants urge, regardless of how or in what form or detail or by whom it has been recorded. The defendants suggest, in addition, that a "recorded statement" should not be limited to electronic recording but includes a statement made by an accused and "recorded" in the rough notes of an investigating officer.

The Commonwealth urges, on the other hand, that such interpretation stretches the language of the Rule; that the Rule is clearly limited to *written* statements made by an accused, meaning statements that he has written, or a recording of such a statement. The Commonwealth further points out that the words "oral statements" are not included in the Rule. Furthermore, the Commonwealth contends that it should not be required to surrender such notes because they are expressly excluded in the Rule:

> This subparagraph does not authorize the discovery or inspection of statements made by Commonwealth witnesses or prospective Commonwealth witnesses to agents of the Commonwealth or *of reports, memoranda or other internal Commonwealth's documents made by agents in connection with the investigation or prosecution of the case,* except as provided in clause (ii) of subparagraph (b)(1) of this rule (scientific reports). (emphasis added)

This conflict is duly noted in the *Virginia Lawyers Handbook,* "Defending Criminal Cases in Virginia" at p. 129:

> There is a question as to whether subparagraph (b)(1)(i) includes non-verbatim summaries of the defendant's oral statements made to police or other governmental agents. The federal courts are split on this point. Compare, e.g., *United States* v. *Federman,* 41 F.R.D. 339 (S.D.N.Y. 1967), with *United States* v. *Morrison,* 43 F.R.D. 516 (N.D. Ill. 1967).

The Commonwealth apparently takes comfort in the very recent Virginia case of *Hackman v. Commonwealth*, decided January 11, 1980 (Record No. 790365) [220 Va. 710]. But the issue is not the same. As noted by the Court in *Hackman*:

> *The statements in question were given to the investigating officers by prosecution witnesses*, Myers and Candice Sams, (*THEY WERE NOT STATE-MENTS OF THE DEFENDANT HIMSELF!*) The state-ment of Myers included his recollection of a conversation between him and Hackman on the date the illegal purchase of liquor was made. The statement of Sams gave her version of Hackman's testimony at trial of the civil action. When the failure to furnish Hackman's counsel with copies of these statements was called to the attention of the court during trial, the Court ruled that the statements were not discover-able. We agree. (emphasis added)

Then, after citing *Bellfield* and the Rule, the Court continued:

> *The statements of Myers and Sams were not disco-verable under subparagraph (b)(1) because they were not written or recorded statements or confessions made by Hackman.* They were state-ments made by prospective Commonwealth witnesses to agents of the Commonwealth in connection with the investigation or prosecution of the case; as such, they were expressly excluded from discovery by subparagraph (b)(2). To be discoverable the statement must be given by the accused rather than by a witness who heard the accused speak. (emphasis added)

Incidentally, the principle derived from *Dozier* was appa-rently not involved in this case. Whether or not these extra judicial statements of Myers and Sams could have been discoverable if contradictory to their in-court testimony was not considered.

It is well to emphasize that the point in issue in the case at bar relates to statements made by a defen-

dant, not statements of Commonwealth witnesses. It might be of benefit to review some of the cases that have dealt squarely with this precise problem. In *United States v. Morrison,* 43 F.R.D. 516 (1967), the Court held:

> Defendant, however, made several oral statements to federal agents, which were incorporated in written interview reports sometime after the conclusion of the interviews. The government refuses to make these reports available on the ground that they do not constitute "statements or confessions made by the defendant" under the recently amended Rule 16(a)(1) of the Federal Rules of Criminal Procedure.
>
> We believe, however, that the spirit of Rule 16(a)(1) could easily be evaded if the government were able to conceal these reports from the defendant. Rule 16 was designed to liberalize the courts' powers in regard to the grant of pre-trial discovery. Were we to deny a request for this material, we can foresee the day when government agents would make it their practice to summarize their interviews, rather than recording them verbatim, in an effort to avoid discovery. *The philosophy underlying Rule 16, in our judgment, applies equally to verbatim statements and summaries thereof. Therefore, we direct the government to produce the summaries of defendant's statements in its possession, custody or control.* (emphasis added)

See also *United States* v. *Scharf,* 267 F. Supp. 19 (S.D. N.Y. 1967) (defendant entitled to inspect memorandum of interview of government agent with defendant containing substance of statements attributed to him); *United States* v. *Harris,* 543 F.2d 1247 (9th Cir. Wash. 1976) (rough notes taken by government agent in interview with accused or written summary of defendant's oral statement held discoverable); *United States* v. *Curry,* 278 F. Supp. 508 (D.C. Ill. 1967) (summary of defendant's statement to government agent that is included in agent's report should be provided the defendant subject to excision of irrelevant or privileged data); *United States* v. *Kuperberg,* 288 F. Supp. 115 (D.C.N.Y. 1967) (defendant's motion to inspect

and copy government agent's memorandum prepared one day to six weeks after interviews with defendants from longhand notes taken during interviews granted). But see as many cases to the contrary collected in 5 A.L.R.3d 819, "Discovery and Inspection of Prosecution Evidence under Rule 16 of Criminal Procedure," § 14 at p. 858, under the subtitle "Government agent's reports or notes of interviews or investigation" (and particularly the pocket supplement).

It must be emphasized that what we are concerned with on this point does not involve the prospect of harassing other witnesses. There is no risk of bribing or intimidating anyone, which is the major reason in support of denying the names of government witnesses, or their statements, to a defendant. The issue here is simply providing the means of testing the accuracy of a written statement made by a government agent of statements made by the defendant. It is an effort to determine if any mistakes have been made in transferring from original rough notes the substance of an interview to a more formal draft. If the transcript of a recorded statement is subject to comparison to the tape itself, why should not comparison of a typewritten summary of an interview with the original notes likewise be made available. What harm would it do? Requiring the production of such notes would not compromise the Commonwealth's files in the slightest. Conceivably, a mere scrivener's error could be corrected or a misunderstanding or ambiguity cleared up. If the rough notes of the government's agent contained anything more than the basic interview with the defendant, such as his impressions or analysis or any other extraneous matter, such could be excised by the Court upon review in camera.

The Commonwealth is directed, therefore, to make available to the defendants the raw notes, if any, made by any investigating officers of interviews they might have had with the defendants which contain statements attributable to them. If these notes should contain any material other than the substance or summary of statements made by the defendants, then they should first be submitted to the Court in camera for possible excision.