## CIRCUIT COURT OF THE CITY OF WINCHESTER

Commonwealth of Virginia

v.

Clyde O. Piper

January 15, 1981

Case No. (Criminal) 5193

By JUDGE HENRY H. WHITING

Upon consideration of the motions made by the defendant, the various memoranda filed by counsel and the independent research done by the Court, the following is the Court's written opinion disposing of the motions made by the accused.

These motions must be disposed of reconciling what on the surface appear to be conflicting principles:

(1) The prosecution's constitutional duty to produce exculpatory information, coupled with the limited discovery permitted, but at the same time mandated by Rule 3A:14(b) of the Rules of the Supreme Court of Virginia.

(2) Protection of: (a) the Commonwealth's case by denying an accused the opportunity to "cut his own jib" after seeing at least a portion of the Commonwealth's case; and (b) the Commonwealth's witnesses against harassment and possible attempts at bribery.

Judge Learned Hand had this to say on the second point:

> *Under our criminal procedure the accused has every advantage.* While the prosecution is held rigidly to the charge, he need not disclose the barest outline of his defense. He is immune from question or comment on his silence; he cannot be convicted when there is the least

fair doubt in the minds of any one of the twelve. Why in addition he should in advance have the whole evidence against him to pick over at his leisure, and make his defense, fairly or foully, I have never been able to see. . . Our dangers do not lie in too little tenderness to the accused. Our procedure has been always haunted by the ghost of the innocent man convicted. It is an unreal dream. *What we need to fear is the archaic formalism and the watery sentiment that obstructs, delays, and defeats the prosecution of crime.* (emphasis added) *U. S.* v. *Garsson,* 291 F. 646, 649 (S.D. N.Y. 1923).

That same concern is expressed by our own Court in Virginia in *Commonwealth* v. *Bellfield,* 215 Va. 303 ·(1974), where Justice Harman, speaking for the entire Court, said:

While we are vigilant to protect the defendant's right to a fair trial, we must likewise be vigilant in maintaining the confidence of our citizens in the police and prosecuting officers. It is only through the testimony of victims of crime and other public-spirited citizens that the criminal laws of the Commonwealth may be fairly and uniformly enforced. Page 307.

Transcending both principles are:
(1) Judge Sobeloff's statement in a speech before a Fourth Circuit Conference:

The Solicitor General is not a neutral, he is an advocate; but an advocate for a client whose business is not merely to prevail in the instant case. My client's chief business is not to achieve victory but to establish justice. We are constantly reminded of the now classic words penned by one of my illustrious predecessors, Frederick William Lehmann, that the government wins its point when justice is done in its courts. *Brady* v. *Maryland,* fn. 2 (373 U.S. at 88.)

(2) Justice Fortas's comments in a concurring opinion in *Giles* v. *Maryland*, 386 U.S. 66, 100 (1967):

> A criminal trial is not a game in which the State's function is to outwit and entrap its quarry. The State's pursuit is justice, not a victim.

The controversy in this case centers around the accused's pretrial discovery requests for:

(1) Written statements or confessions of any accomplice (paragraph 5 of the motion).

(2) What the Court will call a "shotgun" *Brady* request for exculpatory evidence (paragraph 6 of the motion).

(3) A specific *Brady* request for a written confession of Jeffrey Vaughn (paragraph 7 of the motion). (This will be disposed of under (1) above.)

(4) A list of Commonwealth's witnesses (paragraph 8 of the motion).

### I. *Confessions of Any Accomplice*
(Paragraphs 5 and 7 of Accused's Motion)

If exculpatory, either as to guilt or in mitigation of punishment, the above materials are constitutionally required to be produced under the leading case of *Brady* v. *Maryland*, *supra*, and will create post-verdict and judgment rights in accused if not produced in sufficient time to be meaningfully used by the accused during the trial. If the material is not *Brady* material, "There is no constitutional right to discovery in a criminal case and the case of *Brady. . .* did not establish one." *Lowe* v. *Commonwealth*, 218 Va. 679 (1977).

The only other right of discovery is mandated but at the same time limited by Supreme Court Rule 3A:14(b). A quick reading of that rule demonstrates no right to a "confession" or "statement" is granted there.

If the evidence is exculpatory and covered by *Brady* and its progeny, the question then arises *when* must such evidence be produced. The Court cannot fix a general rule applicable to each case, except to say that it must be produced in sufficient time to accord the *Brady* rights. However, bearing in mind what both Judge Hand and Justice Harman have said, as quoted earlier in this opinion, the Commonwealth should have the right to delay

its production to protect its own case and witnesses, the only limitation on that right being an infringement on the *Brady* rights of the accused. The Commonwealth's Attorney will have to decide when the information should be released, subject always to the *Brady* post-judgment scrutiny of the defense and the Court if such delay did affect the accused's rights. See *Sennett v. Sheriff of Fairfax County*, 608 F.2d 537 (4th Cir. 1979). If the prosecution follows the federally-created (by statute) Jencks Doctrine and delivers such statements to defense counsel as and when the witness involved takes the stand, this may well comply with *Brady*. In support of a delay in the production of those documents and the avoidance of the use of them in discovery, the Court refers to Footnote 20 in *U. S.* v. *Agurs*, 427 U.S. 97, 112, 49 L.Ed.2d 342, 354 (1976), where Justice Stevens said:

> It has been argued that the standard should focus on the impact of the undisclosed evidence on the defendant's ability to prepare for trial, rather than the materiality of the evidence to the issue of guilt or innocence. See Note, The Prosecutor's Constitutional Duty to Reveal Evidence to the Defense, 74 Yale L. J. 136 (1964). Such a standard would be unacceptable for determining the materiality of what has been generally recognized as "Brady material" for two reasons. First, that standard would necessarily encompass incriminating evidence as well as exculpatory evidence, since knowledge of the prosecutor's entire case would always be useful in planning the defense. Second, such an approach would primarily involve an analysis of the adequacy of the notice given to the defendant by the State, and it has always been the Court's view that the notice component of due process refers to the charge rather than the evidentiary support for the charge.

The Commonwealth also objects to an order reciting that it must produce all *Brady* material, arguing that the Court is only reiterating its constitutional duty and, in effect, is assuming it may not comply with that duty without an order. The position is well taken for two reasons: first, the one above relied upon by the

Commonwealth, and secondly because any order this Court might make could not add to or subtract from the constitutional duty, but any language used might inadvertently distort the understanding of the parties as to that duty and give rise to some argument that the Court went beyond *Brady* in requiring any such production.

## II. *The "Shotgun" Request for All Exculpatory Material*
### (Paragraph 6 of Accused's Motion)

This "shotgun" request wings no constitutional rights; it is tantamount to no request. The defense cannot thus raise the standard of materiality in a post-conviction attack. *U. S.* v. *Agurs*, 427 U.S. 97, 49 L.Ed.2d 342 at pp. 351-352 (1976). The reasons therefor are cogently set forth by Judge Friendly in *U. S.* v. *Keogh*, 391 F.2d 138, 34 A.L.R.3d 1 at p. 12 (2d Cir. 1968) (admittedly a "no request" case):

> The request serves the valuable office of flagging the importance of the evidence for the defense and thus imposes on the prosecutor a duty to make a careful check of his files.

The Court denies all of the requests in paragraph 6 because they meet none of the Virginia Rule of Court created limited discovery rights nor the constitutionally mandated due process requirements.

## III. *Pre-Trial Disclosure of the Names and Addresses of All Commonwealth Witnesses*
### (Paragraph 7 of Accused's Motion)

In the absence of a provision so requiring, the State is not bound to furnish the defendant with the names of its witnesses, 21 Am. Jur. 2d, *Criminal Law* Section 328. In *Bellfield*:

> [T]he Court expressly approved *Westry* v. *Commonwealth*, 206 Va. 508 (1968), which had been decided before the adoption in 1972 of Part Three A to the Supreme Court Rules on Criminal Practice and Procedure. In *Bellfield* the Court notes:

"In *Westry* v. *Commonwealth*, 206 Va. 508, 114 S.E.2d 427 (1965), *we found no abuse in discretion where the trial court refused the defendant's request for a list of witnesses* and their reports 'touching events and activities in connection with this case.' (emphasis added)"

Further, in *Lowe* v. *Commonwealth*, 218 Va. 670 (1977), the defendant had urged that the Commonwealth be ordered to file "the names and addresses of all persons who were present at the time the alleged offense was committed." The Court held:

"There is no general constitutional right to discovery in a criminal case and the case of *Brady* v. *Maryland*, 373 U.S. 83 (1963), relied on by the defendant, did not establish one. *Weatherford* v. *Bussey*, 429 U.S. 545, 559 (1977). *Our rule providing for discovery in a criminal case, Rule 3A:14, contains no provision requiring the Commonwealth to furnish the names and addresses of the eyewitnesses to a crime.*" (emphasis added). (Opinion, The Honorable Jack B. Coulter, *Commonwealth* v. *Hubble*, Circuit Court for the City of Roanoke.)

However, as is so often true with many rules of law, this is not a blanket rule applicable in every case, and there are instances where there would be a constitutional duty to supply the names and addresses of witnesses prior to trial. That is very clearly set forth in *Sennett* v. *Sheriff of Fairfax County, supra*, where such a failure required that a jury's verdict be set aside since the inability of the defendant to obtain the statements of identifying witnesses clearly violated his constitutional rights. Commonwealth's Attorneys will always keep that in mind whenever opposing any pre-trial discovery demands. In the absence of some special showing, as in *Sennett*, the Court does deny the request for witnesses' names.